UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

GREGORY SULLIVAN                        CIVIL ACTION NO. 07-0023

VERSUS                                  JUDGE S. MAURICE HICKS, JR.

CITY OF SHREVEPORT                      MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 42) filed by Defendant, the City of Shreveport ("the City"). The City moves to dismiss Plaintiff Gregory Sullivan's ("Sullivan") racial discrimination claim, arguing that Sullivan has not offered sufficient evidence that its proffered legitimate, non-discriminatory reason for reassigning Sullivan was pretext or that Sullivan's race was a motivating factor in the reassignment. For the reasons which follow, the Motion for Summary Judgment is **GRANTED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

Sullivan was hired by the City in 2001. See Record Document 42, Exhibit 7 at 18. He began working as an electrician in May 2001 and stayed in that position until 2002, when he was reassigned to other employment within the City. See id., Exhibit 7 at 18-19; see also Record Document 44-4 at 1. Sullivan believes that the reassignment was discriminatory, i.e., based on his race. See Record Document 42, Exhibit 7 at 18, 25. The City contends that the reassignment was based on a 2002 medical report issued by Dr. Mark P. Vigen and Dr. Richard Williams. See id., Exhibit 6 (Affidavit of Herbert Michael Strong, Director of Operational Services for the City), ¶ 6 (stating that the City's "decision to reassign . . . Sullivan was based upon the evaluation of Dr. Vigen and Dr. Williams and

not, in any way, based upon race, nationality, or any other illicit or immoral purpose.").

In 2002, the City's Risk Management Department suggested that Sullivan undergo a psychological evaluation based upon concerns that he might be unstable in the work place and might pose a danger to himself and others. See Record Document 42, Exhibit 6, ¶ 3. Sullivan underwent a psychological evaluation with Dr. Mark Vigen, Ph.D. (a psychologist) and Dr. Richard Williams (a psychiatrist). See id., ¶ 4. By letter dated October 29, 2002, Dr. Vigen informed Tom Dark in the City's Risk Management Department of the results of the work-related psychological evaluation of Sullivan. See id., Exhibit 1. Dr. Vigen and Dr. Williams independently interviewed Sullivan, who also completed the Wechsler Adult Intelligence Scale-III, the Minnesota Multiphasic Personality Inventory-2, the Structured Interview of Reported Symptoms, the Sentence Completion Test, and the Rorschach Inkblot Test. See id. The doctors also reviewed letters written by Sullivan and written reprimands issued to Sullivan by the City. See id. After their evaluation, the doctors expressed concerns about Sullivan's "ability to work with high voltage circuitry and sensitive electronic equipment." Id. The doctors did not "find that Mr. Sullivan [was] suffering from any type of paranoid disorder that would impair his ability to perform his job," but they were "concerned about his long use of alcohol and . . . recommend[ed] that he have periodic and spontaneous drug screens insuring that he [was] not under the influence of alcohol while working." Id. Specifically, the doctors recommended that the City reconsider Sullivan's current employment position, "perhaps reevaluating his skill level and reassigning him to a more suitable position where he could demonstrate more mastery and where less skilled teamwork is needed." Id.

In 2005, the City requested that Dr. Vigen assess Sullivan's competency to return

to electrician status. See id., Exhibit 2. On June 9, 2005, Dr. Vigen responded to Tom Cody in the City's Risk Management Department and expressed concerns with Sullivan's reinstatement to electrician status. See id. Dr. Vigen had reviewed the previous/current testing data and work-related complaints and specifically noted Sullivan's "paranoid and antisocial personality features, use of alcohol, and limited intellectual functioning." Id. Dr. Vigen further stated:

> Sullivan's ability to work safely and effectively with high voltage circuitry was of concern then [in 2002] and remains so at present.
>
> This concern is strengthened by his work complaint history. . . .
>
> The current evaluation suggests that . . . Sullivan exhibits paranoid and antisocial tendencies. This personality, along with his low cognitive functioning and high likelihood of abusing alcohol is pervasive in its pattern and not likely to spontaneously change after three years. I concur with my original recommendations made in 2002. Assignment to a position requiring less technical skills and less dependency on interaction with other workers than his previous placement as an electrician is suggested. Additionally, I recommend that . . . Sullivan undergo spontaneous drug screening to assure he is not under the influence of alcohol while working, attend Alcoholics Anonymous meetings, and begin psychotherapy.

Id.

After Dr. Vigen's June 2005 report, the City asked Dr. Michael Davenport, Ph.D., Clinical Psychologist, to perform psychological testing on Sullivan. Dr. Davenport was Sullivan's choice of physician and the evaluations occurred on September 2, 2005, October 15, 2005, and November 4, 2005. See Record Document 42, Exhibit 3. Dr. Davenport was asked to respond to three referral questions: "1) Is alcohol abuse or alcohol dependence present? 2) Is either paranoid or antisocial/psychopathic deviation present? 3) Is patient at risk to work as an electrician secondary to IQ?" Id. Dr. Davenport stated that "Sullivan's performance of cognitive processing items was indicative of 'Low Average'

intellectual functioning and academic achievements within the 'Borderline/Slow Learner' classification" and that "his scatter pattern is associated with 'perseverative reactions to novel demands.'" Id. Dr. Davenport further found that a "primary pathology exists from 'Alcohol Dependency' with adjunctive relationship discord from 'paranoid,' 'passive-aggressive,' or 'avoidant' behaviors." Id. In conclusion, Dr. Davenport affirmed referral questions #1 and #2, but did not affirm referral question #3. See id. He recommended "continued participation in Alcoholics Anonymous and consideration of adjunctive psychiatric intervention focused upon dysthymic mood and relationship discord." Id. Sullivan admits that Dr. Davenport's report is "pretty much the same" as Dr. Vigen's 2005 report. Record Document 42, Exhibit 5 at 49.

Sullivan filed suit on January 4, 2007 and amended his complaint on March 12, 2007. See Record Documents 1 & 7. He alleged that he was reassigned and not considered for certain employment positions because of race, all in violation of Title VII of the Civil Rights Act. See id. The City denied such allegations, asserting that Sullivan's race was not a factor in whether or not he was considered for employment positions. See Record Document 17. The City filed that instant Motion for Summary Judgment on October 30, 2007. See Record Document 42.

## LAW AND ANALYSIS

### I. Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 282 (5th Cir. 2001). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Alton v. Tex. A&M Univ., 168 F.3d 196, 199 (5th Cir. 1999).

**II.     Racial Discrimination.**

Sullivan's allegation of racial discrimination can be proven through direct or circumstantial evidence. See Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc., 482 F.3d 408, 411 (5th Cir. 2007) (citation omitted). Sullivan has not produced any direct evidence of discrimination, so the Court must "apply the well-known McDonnell Douglas burden-shifting framework as modified and restated by [the Fifth Circuit]." Id., citing Rachid v. Jack In The Box, Inc., 376 F.3d 305, 312 (5th Cir.2004) and McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973).

Under the modified McDonnell Douglas approach, Sullivan must demonstrate a *prima facie* case of discrimination and then the City must come forward with a legitimate, non-discriminatory reason for its decision to reassign Sullivan. See id. at 411. If the City

meets its burden of production, Sullivan "must then offer sufficient evidence to create a genuine issue of material fact that either (1) the [City's] reason is a pretext or (2) that the [City's] reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is [Sullivan's] protected characteristic," i.e., his race. Id. at 412.

For the sole and limited purpose of the instant Memorandum Ruling, the Court will assume that Sullivan has established his *prima facie* case.[1] The City has responded with a legitimate, non-discriminatory reason for reassigning him: Sullivan was reassigned based upon the professional medical opinions and recommendations rendered by Dr. Vigen and Dr. Williams. See Record Document 42, Exhibits 1, 2, & 6. Thus, the City has met its burden of production and the Court will not assess the credibility of the City's proffered reason. See McCoy v. City of Shreveport, 492 F.3d 551, 557 (5th Cir. 2007). Sullivan must now prove that the City's proffered reason is not true, but instead is a pretext for the real discriminatory purpose. See id. To carry this burden, he must rebut the nondiscriminatory reason articulated by the City. See id.

Sullivan has presented no competent summary judgment evidence to rebut Dr. Vigen's 2002 report, which directly preceded the reassignment. Sullivan argues that Dr. Vigen's reports are false. Yet, he conceded in his deposition that Dr. Davenport's report, which Sullivan believes to be accurate, is "pretty much the same" as Dr. Vigen's 2005 report. Record Document 42, Exhibit 5 at 49. Sullivan simply has failed to provide any

---

[1] To establish a *prima facie* case of discrimination under Title VII, a plaintiff must show that he: (1) was a member of a protected class; (2) was qualified for the position that he lost; (3) suffered an adverse employment action; and (4) was replaced by someone outside the protected class or other similarly situated persons were treated more favorably. See Septimus v. Univ. of Houston, 399 F.3d 601, 609 (5th Cir.2005).

evidence to question or rebut the veracity of the medical reports or the City's reliance on such reports as a basis for his reassignment.[2]

Likewise, Sullivan fails to make the case that racial discrimination was a motivating factor in the City's decision to reassign him. This is not a case where Sullivan can point to racial comments made by decision makers as evidence that racial discrimination played a factor in his reassignment. In his opposition, Sullivan points to a "terrorist report" to support his allegation of discrimination. Record Document 44-1 at 1. This reference appears to relate to a January 17, 2002 Inter-Office Memorandum, wherein Kirk Rice ("Rice"), the City's Zone Manager/Sewer Lift, informed LeRoy Moore ("Moore"),

---

[2]Sullivan has also filed a Daubert Motion (Record Document 49) seeking to exclude Dr. Vigen's "falsified report" because it is irrelevant and unreliable. The 2002 report easily meets relevancy requirements, as the report is the City's proffered legitimate, non-discriminatory reason for reassigning Sullivan. As to reliability, Sullivan has offered conclusory statements, which only express his subjective, unsupported opinion, to challenge Dr. Vigen's report and has not properly challenged the report pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786 (1993).

A Daubert review "focus[es] . . . on principles and methodology, not on the conclusions that [the expert's submissions] generate." Daubert, 509 U.S. at 594-595, 113 S.Ct. at 2797. Trial courts perform a "gate-keeping role" and "make a preliminary assessment of whether the reasoning or methodology underlying the [expert] testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Hathaway v. Bazany, 507 F.3d 312, 317 (5th Cir. 2007). The courts consider "the extent to which a given technique can be tested, whether the technique is subject to peer review and publication, any known potential rate of error, the existence and maintenance of standards governing operation of the technique, and, finally, whether the method has been generally accepted in the relevant scientific community." Id. at 318.

The Court finds that Sullivan has produced no evidence that Dr. Vigen's report was "falsified." However, the Court notes that Sullivan's hollow accusation is in line with the findings of all experts who opined on his personality traits and disorders. Further, Sullivan has presented no credible, competent evidence and pointed to nothing in the record that would call into question Dr. Vigen's reasoning, methodology, or technique. Instead, Sullivan appears to be personally challenging Dr. Vigen's conclusions, not his methodology. Sullivan's contentions are merely conclusory in nature; he has come forward with no case law to support his position that Dr. Vigen's report should be excluded. Accordingly, Sullivan's Daubert Motion is **DENIED**.

Superintendent, Department of Operational Services, that Sullivan had "recently made at least one expression indicating sympathy for the recent terrorist activity directed toward the United States." Record Document 44-1, Exhibits at 1-2. Rice requested that Moore investigate the matter. See id. Even if the Court assumes that Sullivan's expression of sympathy towards terrorist activity was a motivating factor in his reassignment, the expression of sympathy does not relate to Sullivan's race. Accordingly, any action by the City in response to the expression of sympathy clearly was not based upon race. Sullivan has no evidence that race was a motivating factor in the decision to reassign him. Because Sullivan has failed to present evidence that the City's non-discriminatory reason for reassigning him was pretext or that race was a motivating factor in the reassignment, he cannot withstand summary judgment.

## CONCLUSION

For the foregoing reasons, the City's Motion for Summary Judgment (Record Document 42) is **GRANTED** and all of Sullivan's claims are **DISMISSED WITH PREJUDICE**. A judgment consistent with the terms of the instant Memorandum Ruling will issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 12th day of February, 2008.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE